FILED
2023 Jan-24  PM 01:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| AFC FRANCHISING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-cv-00456-JHE |
| | ) | |
| DANILO PURUGGANAN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

Plaintiff AFC Franchising, LLC ("AFC") commenced this action against Danilo Purugganan ("Purugganan") in the Circuit Court of Shelby County, Alabama, asserting two counts for declaratory judgment concerning provisions of a Master Development Agreement and one count for attorneys' fees and costs. (Doc. 1-1). Thereafter, Purugganan removed the action to this Court. (Doc. 1). Because this is an improper anticipatory action and relevant factors favor against entertaining it, this action is **TRANSFERRED** to the United States District Court for the District of Connecticut pursuant to 28 U.S.C. § 1404(a).

The Court will first explain the extensive factual and procedural background of this case. The Court will then discuss the compelling circumstance that supports its decision to decline to exercise discretionary authority over this declaratory judgment action and the factors favoring transfer to the District Court for the District of Connecticut.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 20).

## I.  Factual & Procedural History

AFC is an Alabama limited liability company with its principal place of business in Shelby County, Alabama.  (Doc. 1-1 at ¶ 2).  Purugganan is a resident individual of the State of New York. (Doc. 1-1 at ¶ 3).  On August 26, 2009, Purugganan executed a Master Developer Agreement ("MDA") with franchisor Doctors Express Franchising, LLC ("DEF").  (Doc. 1-1 at ¶¶ 4, 5; Doc. 1-2).  The MDA is a franchise agreement pursuant to which Purugganan obtained the rights to develop and manage DEF urgent care centers.  (*See* doc. 1-2 at 6–7).  After a series of acquisitions, AFC was assigned DEF's interest in the MDA.  (Doc. 1-1 at ¶¶ 6–7).  The parties succeeded to the terms of the MDA, including § 19.7 ("Consent to Jurisdiction"), which provides the following forum selection requirement:

> You and your owners agree that all actions arising under this Agreement or otherwise as a result of the relationship between you and us must be commenced in a state or federal court of competent jurisdiction within such state or judicial district in which we have our principal place of business at the time the action is commenced, and you (and each owner) irrevocably submit to the jurisdiction of those courts and waive any objection you (or the owner) might have to either the jurisdiction of or venue in those courts.

(Doc. 1-1 at ¶ 8; Doc. 1-2 at 31, § 19.7).

A dispute arose between AFC and Purugganan over the interpretation of certain provisions in the MDA, and the parties engaged in negotiations.  (Doc. 1-1 at ¶¶ 1, 4, 9–10; Doc. 1-2). Purugganan threatened to file suit in venues other than Alabama, which AFC regarded as a breach of the MDA's forum selection clause.  (Doc. 1-1 at ¶ 9).  Additionally, Purugganan challenged AFC's ability to develop company-owned franchises in the territory defined by the MDA.  (Doc. 1-1 at ¶ 10).

**A.      AFC's Complaint in the Circuit Court of Shelby County, Alabama**

Due to Purugganan's alleged threat to breach the forum selection clause, AFC filed a complaint against Purugganan in the Circuit Court of Shelby County, Alabama, on March 6, 2020. (Doc. 1-1).  As noted previously, the complaint asserts two counts for declaratory judgment and one count for attorneys' fees and costs.  (Doc. 1-1 at ¶¶ 13–23).

AFC's first claim is for a declaratory judgment that the MDA's forum selection clause requires the parties to litigate any contract disputes in Alabama.  (Doc. 1-1 at ¶¶ 8, 11, 13–16; doc. 1-2 at 31, § 19.7).  Specifically, AFC alleges Purugganan threatened to breach the forum selection clause by filing lawsuits related to the MDA in venues outside of Alabama, where AFC has its principal place of business.  (Doc. 1-1 at ¶¶ 2, 9).

AFC's second claim is for a declaratory judgment that the MDA's limited exclusivity clause permits it to develop company-owned franchises in the territory defined by the MDA.  (Doc. 1-1 at ¶¶ 10, 17–19).  The limited exclusivity clause in the MDA states:

> Provided that you are in compliance with the terms of this Agreement, we will not grant another master developer the right to solicit Prospects for Doctors Express Urgent Care Businesses in the Territory.  Except as expressly granted by this Section 1.4, we and our affiliates retain all rights with respect to identification of Prospects and Franchisees for Doctors Express Urgent Care Businesses and Doctors Express Urgent Care Centers, the System, operation of business under the Marks, the sale of franchises for similar or dissimilar services, the operation of businesses offering similar or dissimilar services and any other activities we deem appropriate whenever and wherever we desire and you acknowledge that we have not granted you any exclusive rights.

(Doc. 1-1 at ¶ 10; Doc. 1-2 at 3, § 1.4).

AFC's third and final claim asserts that Purugganan is obligated to pay AFC's attorneys' fees and costs allegedly incurred from his threats to violate the forum selection clause and challenge AFC's interpretation of the limited exclusivity clause.  (Doc. 1-1 at ¶¶ 20–23).

3

**B.      Purugganan's Complaint in the District of Connecticut**

On March 17, 2020, eleven days after AFC filed its complaint in Shelby County, Purugganan filed suit against AFC in the United States District Court for the District of Connecticut.   (Doc. 3-4).   The Connecticut action is styled *Danilo Purugganan v. AFC Franchising, LLC*, No. 3:20-cv-00360-KAD.  (Doc. 48-6 at 2–3).   In the Connecticut complaint, Purugganan raises thirteen claims against AFC related to the MDA.   (Doc. 3-4 at ¶¶ 45–124). Purugganan asserts that he sued in the District of Connecticut because, among other reasons, all franchise businesses that he developed and managed pursuant to the MDA are in Connecticut and New York.  (Doc. 3-2 at ¶ 7; Doc. 3-4).  As explained further below, there have been extensive proceedings in Connecticut that bear heavily on the issues before this Court.

**C.      Removal and Motion to Dismiss Shelby County action**

On April 2, 2020, Purugganan removed the Shelby County action to this Court based on diversity jurisdiction.  (Doc. 1).  He then moved to dismiss this action for lack of personal jurisdiction and improper venue or, alternatively, to transfer this action to the District of Connecticut.  (Doc. 3 at 11–13).  He asserted that Connecticut was the only proper forum because the District of Connecticut had personal and subject matter jurisdiction, all events and omissions giving rise to AFC's claims were occurring in Connecticut, and "the evidence, witnesses, convenience of parties and the interest of justice strongly favor the transfer of this case to Connecticut."  (Doc. 3 at 12).

AFC countered that the forum selection clause in the MDA defeated Purugganan's attempt to dismiss this action or transfer it to Connecticut.  (Doc. 7 at 1–2).  AFC argued that the forum selection clause unequivocally requires Purugganan to litigate any disputes in Alabama because that is where AFC's principal place of business is located.  (Doc. 7 at 1–2).  AFC asserted that the

forum selection clause was enforceable and required litigation in Alabama even though DEF had its principal place of business in Maryland at the time the MDA was executed and later assigned its interest in the MDA to AFC.  (Doc. 7 at 1–9).

> **D.    AFC's Motion to Remand**

On May 4, 2020, AFC moved to remand this action to the Circuit Court for Shelby County, Alabama, for lack of subject matter jurisdiction based on the forum selection clause.  (Doc. 13). AFC argued that the amount in controversy did not exceed $75,000 to satisfy federal diversity jurisdiction.   (Doc. 13 at 1–4).   AFC also argued that the forum selection clause required Purugganan to submit to the jurisdiction of the Shelby County court because that is where AFC commenced the action.  (Doc. 13 at 5–6).

> **E.    Dismissal for Lack of Personal Jurisdiction**

On September 14, 2020, the Court denied AFC's motion to remand and granted Purugganan's motion to dismiss.  (Docs. 32, 33).  The Court denied remand because Purugganan satisfied his burden of demonstrating that AFC's benefit from declaratory relief in its favor would exceed $75,000.  (Doc. 32 at 4–7).  The Court granted Purugganan's motion to dismiss for lack of personal jurisdiction, reasoning that he did not have sufficient contacts with Alabama and the forum selection clause did not subject him to suit in Alabama.  (Doc. 32 at 9–14).

> **F.    The Eleventh Circuit Reverses**

AFC appealed this Court's dismissal for lack of personal jurisdiction and the Eleventh Circuit reversed.  *See AFC Franchising, LLC v. Purugganan*, 43 F.4th 1285, 1296 (11th Cir. 2022). First, the Eleventh Circuit "conclude[d] that the forum-selection clause is applicable to this suit in the Northern District of Alabama, where AFC has its principal place of business."  *Id.* at 1294. The Eleventh Circuit described the forum selection clause as "floating" "because it ties the chosen

forum to a mutable fact—here, the franchisor's principal place of business." *Id.* at 1289.  At the time the MDA was executed, DEF was the franchisor and had its principal place of business in Maryland, but at the time this lawsuit was filed, DEF had assigned all of its rights in the MDA to AFC.  *Id.*  AFC argued, and the Eleventh Circuit agreed, that the forum selection clause "now refers to [AFC's] principal place of business [in Alabama] because—as a valid assignee—[AFC] succeeded to all of Doctors Express's rights and obligations under the contract." *Id.* at 1291.  The Eleventh Circuit explained that since the MDA explicitly authorized DEF to assign the MDA "to a third party without restriction," AFC consequently acquired *all* of DEF's rights, including the right to litigate in the state or judicial district containing its principal place of business.  *Id.* at 1291–92.

Next, the Eleventh Circuit determined that the forum selection clause was enforceable.  *AFC Franchising*, 43 F.4th at 1294.  Because the forum selection clause would otherwise apply, Purugganan had "the burden of demonstrating—by 'a strong showing'—that enforcement would be 'unfair or unreasonable under the circumstances.'" *Id.* at 1294 (quoting *Don't Look Media, LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1297 (11th Cir. 2021)).  The Eleventh Circuit held that Purugganan did not satisfy this burden because: (1) there was no evidence of fraud or overreaching; (2) the forum selection clause was "reasonably communicated"; (3) the clause unambiguously extends to assignees; (4) Purugganan is a businessman who read the agreement and had the opportunity to ask questions and have an attorney review the contract; (5) there was "no indication that Alabama is so unfair or inconvenient a forum as to effectively deprive Purugganan, a New York resident, of a remedy or his day in court,"; and (6) enforcement would not frustrate any public policy.  *Id.* at 1294–95.  The Eleventh Circuit had "no reason to doubt that Purugganan didn't specifically imagine litigating in Alabama when he signed the Master Developer Agreement," but

concluded that he knew generally that "the litigation forum could change over the 15-year life of this contract," "the bargained-for forum would depend on the location of the franchisor's principal place of business 'at the time the action is commenced,'" and "the franchisor could assign its rights and obligations under the agreement 'to a third party without restriction.'" *Id.* at 1295.

The Eleventh Circuit concluded that Purugganan had "ample notice that the agreement could be assigned and that [he] might have to litigate in a different forum—including, potentially, Alabama." *Id.* at 1295–96 (internal quotation marks omitted). The Eleventh Circuit further concluded that Purugganan "voluntarily agree[d] to an applicable and enforceable floating forum-selection clause," and therefore waived his right to contest personal jurisdiction and venue in this case. *AFC Franchising,* 43 F.4th at 1296. Accordingly, the Eleventh Circuit reversed this Court's dismissal for lack of personal jurisdiction and remanded for further proceedings. *Id.*

### G.   Judge Tjoflat's Concurrence and Proceedings in the Connecticut Action

Eleventh Circuit Judge Tjoflat "agree[d] the forum selection clause provides the Northern District of Alabama with personal jurisdiction over Purugganan" but wrote a concurring opinion to "demonstrate the futility and inefficiency of seeking a declaration on the meaning of a forum selection clause when, as here, a parallel proceeding in another court is either imminent or ongoing." *AFC Franchising*, 43 F.4th at 1296 (Tjoflat, J., concurring). In his concurrence, Judge Tjoflat set out "the relevant facts and decisions from the ongoing parallel proceedings in the United States District Court for the District of Connecticut," explained why the Eleventh Circuit's decision would have "no impact on the Connecticut District Court's decision-making," and discussed "the foolishness of this sort of anticipatory litigation." *Id.* at 1296–97.

As support, Judge Tjoflat pointed out that the parties had litigated the forum selection clause issue three times in the District of Connecticut by the time the Eleventh Circuit issued its

opinion on AFC's appeal in this case. *AFC Franchising*, 43 F.4th at 1297 (Tjoflat, J., concurring). The District of Connecticut first reviewed the forum selection clause on May 13, 2020, after AFC moved to dismiss Purugganan's complaint for improper venue based on the forum selection clause. *See id.* at 1297–98; *Purugganan v. AFC Franchising, LLC ("Purugganan I")*, No. 3:20-cv-00360-KAD, 2020 WL 2494718 (D. Conn. May 13, 2020). The District of Connecticut analyzed the forum selection clause under the Second Circuit's four-part test for determining whether a forum selection clause is enforceable. *("Purugganan I")*, 2020 WL 2494718, at *2. Under the Second Circuit test, a forum section clause is enforceable if "'(1) the clause was reasonably communicated to the party resisting its enforcement; (2) the clause is mandatory or permissive; and (3) the claims and parties to the dispute are subject to the clause.'" *Id.* (quoting *Fasano v. Yu Yu*, 921 F.3d 333, 335 (2d Cir. 2019)). "Satisfaction of these factors creates a presumption of enforceability, which can be overcome at step four by 'a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* (quoting *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014)). The District of Connecticut found that the forum selection clause failed steps one and three of the four-part test and therefore was not presumptively enforceable. *Purugganan I*, 2020 WL 2494718, at *3.

The District of Connecticut analyzed the forum selection clause a second time on June 4, 2020, after AFC moved the court to reconsider denying AFC's motion to dismiss. *AFC Franchising, LLC*, 43 F.4th at 1298; *Purugganan v. AFC Franchising, LLC ("Purugganan II")*, No. 3:20-cv-00360-KAD, 2020 WL 3000761 (D. Conn. June 4, 2020). According to Judge Tjoflat, "the Connecticut District Court made its views on the forum selection clause even plainer" in denying the motion for reconsideration by stating:

> [E]ven considering these arguments anew, the Court remains unpersuaded that the MDA's forum selection clause requires that this suit be litigated in Alabama.

Indeed, perhaps the only analytical point that the Court might clarify from its prior memorandum of decision is that, in the Court's view, this is not a close call.  What AFC asks this Court to do—apply a floating forum selection clause to a future, unknown and unidentified assignee of a contracting party absent express language extending the forum selection provision to that party's assignee or successor-in-interest—reaches so far beyond the available case law upholding floating forum selection clauses that even if the cases AFC cites were binding on the Court (which they are not), the Court would still find them distinguishable for the very reasons articulated in its previous memorandum of decision.

*Purugganan II*, 2020 WL 3000761, at *2.

The District of Connecticut addressed the forum selection clause a third time on November 15, 2021, when resolving Purugganan's motion for judgment on the pleadings as to AFC's four counterclaims.  *AFC Franchising, LLC*, 43 F.4th at 1299; *Purugganan v. AFC Franchising, LLC ("Purugganan III")*, No. 3:20-cv-00360-KAD, 2021 WL 5301522, at *2 (D. Conn. Nov. 15, 2021).  One of AFC's counterclaims was for a declaratory judgment that the forum selection clause requires any litigation to be brought in Alabama.  *Id.* at *2.  In fact, AFC's counterclaim in the Connecticut action labeled "COUNT ONE (Declaratory Judgment)" is effectively identical to AFC's entire complaint in this action because the counterclaim seeks declarations that the forum selection clause requires litigation in Alabama, that the limited exclusivity clause permits AFC to develop company-owned franchises in the territory embraced by the MDA, and that Purugganan is obligated to pay AFC's attorneys' fees and costs allegedly incurred from his threats to violate the forum selection clause and challenge AFC's interpretation of the  limited exclusivity clause. Answer and Counterclaim, *Purugganan v. AFC Franchising, LLC*, No. 3:20-cv-00360-KAD (D. Conn. May 27, 2020), ECF No. 49.

The District of Connecticut granted Purugganan's motion for judgment on the pleadings as to AFC's counterclaim regarding the forum selection clause.  *Purugganan III*, 2021 WL 5301522, at *3.  The court's reasoning was simple: it had already decided when resolving AFC's motion to

dismiss that the forum selection clause did not require litigation in Alabama.  *Id.* at *2.
Notwithstanding that fact, AFC argued that the District of Connecticut's prior holding was "of
'limited guidance' given the pending appeal before the Eleventh Circuit on the question of whether
Alabama is the required venue for this litigation."  *Id.*  AFC was referring to its appeal to the
Eleventh Circuit of this Court's dismissal of this case for lack of personal jurisdiction.  The District
of Connecticut disagreed with AFC's argument because the appeal was still pending but stated that
"if the Eleventh Circuit Court of Appeals determines that the forum selection clause is enforceable
by AFC against Purugganan, then [the District of Connecticut] will likely honor that determination,
regardless of the Court's own differing opinion."  *Id.* at *2 n.3.

        In addition, the parties have done much more in the District of Connecticut than litigate the
enforceability of the forum selection clause.  As Judge Tjoflat stated, "the parties have now been
litigating their claims in the District of Connecticut for almost two and a half years.  In that time,
the parties have engaged in extensive motion practice, including motions for temporary restraining
orders and preliminary injunctions, as well as several court-ordered settlement negotiations."  *AFC
Franchising*, 43 F.4th at 1299 (Tjoflat, J., concurring).   The District of Connecticut is also
considering a motion for partial summary judgment that Purugganan filed on December 23, 2021,
and has heard oral argument on the motion.  (Doc. 48-6 at 27–28).  And there is a fully briefed
motion to transfer pending before the District of Connecticut that AFC filed after the Eleventh
Circuit issued its decision on AFC's appeal.  *See Purugganan v. AFC Franchising, LLC*, No. 3:20-
cv-00360-KAD (D. Conn. Aug. 30, 2022), ECF Nos. 205, 208, 209, 210.

        After describing the litigation that had taken place in Connecticut, Judge Tjoflat discussed
how the Eleventh Circuit's decision would have no impact on the Connecticut court:

        Our decision today will return this case to the Northern District of Alabama.  On
        remand, the District Court will require Purugganan to answer AFC's complaint,

and the parties will then proceed to litigate the case.  Should that Court see fit to enter a declaratory judgment about the validity of the forum selection clause, then and only then may AFC argue in the District of Connecticut that the forum selection clause issue is precluded by the Northern District of Alabama's decision.

So, unfortunately for AFC, our decision today will have no binding effect on the Connecticut District Court.  All we decide is that the Northern District of Alabama has personal jurisdiction over Purugganan in this declaratory judgment action.  What's more, AFC's self-inflicted legal woes will continue even if the Northern District of Alabama does grant AFC the declaratory relief it seeks.  Should the Northern District of Alabama grant declaratory relief and declare the forum selection clause valid, the Connecticut District Court will then have to independently determine (after AFC amends [its] answer to plead issue preclusion) whether (1) to give that decision preclusive effect under the Second Circuit's issue preclusion test, (2) if so, whether the forum selection clause is enforceable under Second Circuit precedent, not Eleventh Circuit precedent, under the circumstances presented in Connecticut, and (3) if so, whether the Connecticut District Court should exercise its discretion (considering the time already invested in Connecticut) to transfer the case under 28 U.S.C. § 1404(a) or dismiss under the doctrine of *forums non conveniens*.  Then, any decision the Connecticut District Court makes will be reviewed by the Second Circuit, either through an appeal from final judgment or an interlocutory appeal.

*AFC Franchising*, 43 F.4th at 1299–1300 (Tjoflat, J., concurring) (footnotes omitted).

In footnote four of his concurrence, Judge Tjoflat explained why this Court might decline

to entertain AFC's declaratory judgment action:

The Supreme Court has made "clear that district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).  This may well be a case where the "district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose." *Id.* at 288.  After all, "declaratory judgment actions are equitable in nature." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005).  So, the District Court would consider all relevant equitable factors, including whether AFC already has an adequate remedy at law in the District of Connecticut and whether it is proper for a district court in Alabama to decide an issue before the District of Connecticut.

Another consideration would be the first-filed rule.  Typically, the first-filed rule would favor having the Northern District of Alabama decide this declaratory judgment action absent compelling circumstances.  *Id.*  However, "[i]n determining whether compelling circumstances exist, we have recognized that for declaratory judgment actions 'one equitable consideration . . . is whether the . . . action was

filed in apparent anticipation of the other pending proceeding.'" *Id.* (quoting *Ven-Fuel, Inc. v. Dep't of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982)).  And we have explicitly held that district courts do not abuse their discretion when "dismiss[ing] a declaratory judgment action . . . filed in apparent anticipation of another proceeding."  *Id.* at 1137.

*AFC Franchising*, 43 F.4th at 1299 n.4 (Tjoflat, J., concurring) (some citations omitted).

Judge Tjoflat then discussed how "AFC's atypical litigation strategy" has "cost itself, Purugganan, and the federal judicial system a great deal of time and money for little to no benefit." *AFC Franchising*, 43 F.4th at 1302 (Tjoflat, J., concurring).  Judge Tjoflat explained that as a result of AFC filing an anticipatory suit in Alabama seeking a favorable interpretation of the forum selection clause, "[t]he MDA's forum selection clause has now been litigated five times: three times in the District of Connecticut, once in the Northern District of Alabama, and once in the Eleventh Circuit."  *Id.*  Judge Tjoflat stated that the issue could be litigated four more times: "(1) in the Northern District of Alabama on remand from this appeal, (2) again in the Eleventh Circuit once the Northern District of Alabama makes its decision, (3) again in the District of Connecticut following the Northern District of Alabama's decision, and (4) finally, in the Second Circuit."  *Id.*

Judge Tjoflat then set out what AFC should have done to "conduct[] this litigation in a sensible manner":

> Once Purugganan informed AFC of his intention to sue in Connecticut or New York, a wise lawyer would have realized that AFC must litigate the forum selection clause in whatever court Purugganan filed in regardless of any declaratory judgment action AFC might file in Alabama.  So, instead of filing this suit in Alabama, the wise lawyer would have simply prepared his arguments under the forum selection clause and allowed Purugganan to file suit wherever he wished, as is his right as the real plaintiff in this litigation.  Then, once Purugganan filed his suit in the District of Connecticut, AFC could have moved for transfer or dismissal based on the forum selection clause and petitioned for a writ of mandamus from the Second Circuit had the Connecticut District Court still denied AFC's motion.  This course of action would have resolved the forum selection clause issue in a timely and efficient manner.

*AFC Franchising*, 43 F.4th at 1302–03 (Tjoflat, J., concurring).   Judge Tjoflat concluded his

concurrence by explaining why "AFC's litigation strategy has detrimental impacts on the federal

judicial system beyond mere inefficiency":

> It is not the job of the Northern District of Alabama or the Eleventh Circuit to decide whether the District of Connecticut should apply the MDA's forum selection clause and transfer Purugganan's action to Alabama.  That responsibility lies solely with the District of Connecticut and the Second Circuit.  Attempting to use a declaratory judgment action to have a district or circuit court "grade the papers" of a district court outside its circuit undermines respect for the federal judiciary and pushes the boundaries of federal court jurisdiction.  Indeed, our opinion today is about as close as a federal court can get to issuing an advisory opinion without *technically* violating Article III of the U.S. Constitution.

*AFC Franchising*, 43 F.4th at 1303 (emphasis in original) (Tjoflat, J., concurring).

### H.    Proceedings after Reversal and Remand

On September 13, 2022, after the Eleventh Circuit reversed this Court's order dismissing

this case for lack of personal jurisdiction and remanded for further proceedings, this Court ordered

Purugganan to answer AFC's complaint and ordered the parties to show cause whether the Court

should exercise its discretion to entertain this declaratory action "given the advanced stage of

litigation in the District of Connecticut."  (Doc. 44 at 2).  The Court stated that the parties'

responses should include a discussion of footnote four in Judge Tjoflat's concurrence.  (Doc. 44

at 2).

On September 23, 2022, Purugganan filed an Answer to AFC's complaint and alleged

counterclaims, including three counts for breach of contract and two counts for declaratory

judgment.  (Doc. 45).

On October 4, 2022, AFC responded to the Court's order to show cause.  (Doc. 46).  AFC

attached to its response the memorandum of law it submitted to the District of Connecticut in

support of AFC's motion to transfer the Connecticut case to this Court and adopted the arguments contained within.  (Doc. 46-1).

AFC urges the Court to exercise its discretionary authority to entertain this declaratory judgment action and, as instructed, discusses each issue raised in footnote four in Judge Tjoflat's concurrence.  First, AFC argues that it had legitimate business reasons to file suit as soon as possible after Purugganan indicated he may challenge the forum selection clause.  (Doc. 46 at 3–5).  According to AFC, the same forum selection clause exists in other franchise agreements between AFC and franchisees across the country, so "[t]he potential impact of myriad Developers and Franchisees refusing to honor the [forum selection] clause could have devastating financial consequences to AFC in the long term."  (Doc. 46 at 4).

Second, AFC argues that it was important to litigate the forum selection clause in Alabama, and not another forum like Connecticut, because Alabama was the forum prescribed by the clause and AFC's employees responsible for administering the MDA work in Alabama.  (Doc. 46 at 5–7).

Third, AFC asserts that litigation was not "'imminent' as that term is used in decisions involving first and second filed cases" because "AFC carefully weighed all factors before it and chose to file an action for breach and declaratory judgment to defend its forum selection clause and determine its rights."  (Doc. 46 at 7–8).  AFC contends it had to take "proactive measures," not the "passive strategy" Judge Tjoflat allegedly suggested, to protect itself from the serious consequences of Purugganan following through on his threat to challenge the forum selection clause.  (Doc. 46 at 7–8).

Fourth, AFC asserts that it never intended to waste federal judicial resources.  (Doc. 46 at 8).  Rather, according to AFC, it exercised its right to have a court determine the justiciable

14

controversy between it and Purugganan, and all proceedings that followed were a result of both

parties legitimately exercising their rights.  (Doc. 46 at 8–10).  AFC also suggests that Purugganan,

at least under AFC's understanding of Judge Tjoflat's logic, may be the party who wasted federal

judicial resources because he filed a competing action in Connecticut instead of litigating his

claims in this Court, and opposed staying the Connecticut case pending the appeal to the Eleventh

Circuit in this case.  (Doc. 46 at 9).  AFC summed up its opposition to the suggestion that it wasted

judicial resources as follows:

> While it may have been within the realm of foreseeability to AFC that the state
> court action could be removed, the concurring opinion seems to take it as an article
> of faith that AFC should have foreseen, and is therefore responsible for,
> Purugganan filing the competing second action in Connecticut rather than litigating
> these issues in the Northern District of Alabama.  As stated, the premise that
> litigation was "imminent" in Connecticut at the time of AFC's filing is not correct.
> To now deny AFC relief to which it is entitled because Purugganan chose to file a
> second action and has been successful in advancing it further than this action is
> inconsistent with justice and equity.  To deny AFC the relief to which it is entitled
> because it may have an impact on the Connecticut case is likewise inconsistent.

(Doc. 46 at 10).

Moreover, AFC asserts that the outcomes in two cases cited in Judge Tjoflat's footnote

four, *Manuel v. Convergys Corp.*, 430 F.3d 1132 (11th Cir. 2005), and *Ven-Fuel, Inc. v. Dep't of

the Treasury*, 673 F.2d 1194 (11th Cir. 1982), support this Court's review of AFC's declaratory

judgment claims.  (Doc. 46 at 11–13).  AFC contends that *Ven-Fuel* does not support dismissal

because here, unlike in *Ven-Fuel*, "AFC had a reasonable apprehension of a controversy sufficient

to warrant a declaratory judgment action, but the facts do not support the contention that litigation

was imminent."  (Doc. 46 at 12).  And AFC argues that, like in *Manuel* where the Eleventh Circuit

"did not find compelling circumstances sufficient to justify abandoning the well-established first-

filed rule," the Court should not dismiss Count Two because of the "advanced stage" of the

litigation in Connecticut since "all discovery conducted in the Connecticut action will transfer to this Court if the Connecticut case is transferred" to this Court.  (Doc. 46 at 12–13).

Finally, AFC argues that the balance of convenience favors the Court entertaining AFC's declaratory judgment action for the reasons contained in its brief in support of its motion to transfer filed in the District of Connecticut.  (Doc. 46 at 13–14) (citing doc. 46-1 at 25–29).

On October 14, 2022, AFC filed an Answer to Purugganan's counterclaims.  (Doc. 47).

On October 25, 2022, Purugganan filed a response to the Court's order to show cause in which he urges the Court to decline to entertain AFC's declaratory judgment action.  (Doc. 48). Purugganan submitted with his response correspondence between his attorney and AFC that, according to Purugganan, demonstrate that AFC filed this action in anticipation of Purugganan filing suit in another district.  (Docs. 48-1, 48-2, 48-3).  Specifically, on February 28, 2020, Purugganan's attorney sent AFC a notice demanding mediation after Purugganan learned that AFC intended to purchase franchises for itself in the territory covered by the MDA.  (Doc. 48-1 at 2– 3).  Purugganan's attorney requested that AFC respond within ten business days.  (Doc. 48-1 at 2). That same day, Purugganan's attorney sent a separate letter to AFC indicating that Purugganan was prepared to file suit in Connecticut or New York if AFC did not respond to the mediation demand.  (Doc. 48-2 at 5, 8).  AFC filed suit in Shelby County, Alabama, one week later and before the 10-day response period to the mediation demand expired.  (Doc. 1-1).  The day after AFC filed its complaint, AFC's attorney sent an email to Purugganan's attorney stating that AFC would not participate in mediation.  (Doc. 48-3 at 2).  So, according to Purugganan, AFC clearly filed suit in Alabama to beat him to the courthouse—*i.e.*, "the action was filed in apparent anticipation of another proceeding," *Manuel*, 430 F.3d at 1137—and the Court should therefore dismiss AFC's

declaratory judgment action under one of the exceptions to the first-filed rule.  (*See* doc. 48 at 2–3, 7–9).

Further, Purugganan asserts that the Court declining to exercise jurisdiction here would "conserve judicial resources, promote efficient and complete disposition of cases," and "avoid piecemeal decisions" between this Court and the District of Connecticut.  (Doc. 48 at 9). Purugganan asserts that "[a]llowing this case to proceed in light of the pending Connecticut action would result in fragmented resolution of issues relating to the same circumstances, as well as a possibility of inconsistent judgments," and would enable AFC's alleged plan to delay these proceedings as long as possible.  (Doc. 48 at 9).

Finally, Purugganan argues that the convenience of the parties and the interests of justice favor the Court declining to entertain this action.  (Doc. 48 at 10–13).  Purugganan asserts that AFC's argument as to its many contracts with franchisees across the country is a "red herring" because this Court's decision will not affect any other contracts and each court will conduct "a case-by-case assessment of whether the forum is appropriate under the facts existing in each such case."  (*Id.* at 10–11).  Purugganan contends that the advanced stage of litigation in Connecticut, especially the pending motion for partial summary judgment and the dispositive rulings already made, favors the parties continuing in Connecticut and not here.  (*Id.* at 12–13).  And Purugganan emphasizes that one of his residences and the facilities that are subject to this litigation are in the area encompassed by the District of Connecticut.  (*Id.* at 13).

## II.  Analysis

### A.  The Declaratory Judgment Counts

AFC's complaint contains two counts for declaratory judgment concerning the MDA's forum selection clause and the limited exclusivity clause.  (Doc. 1-1 at ¶¶ 13– 19).  AFC requests

that the Court declare that (1) venue of any litigation is to be pursued in Alabama under the forum selection clause; and (2) ACF is within its contractual rights to develop its company-owned franchises within the territory embraced by the MDA under the limited exclusivity clause. (Doc. 1-1 at ¶¶13–19).

The federal Declaratory Judgment Act does not require a court to accept jurisdiction over a declaratory judgment claim. Instead, "[t]he Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides in relevant part that in 'a case of actual controversy . . . any court of the United States *may* declare the rights and legal relations of any interested party seeking such declaration.'" *Nat'l Tr. Ins. Co. v. S. Heating & Cooling Inc.*, 12 F.4th Cir. 1278, 1281 (11th Cir. 2021) (quoting 28 U.S.C. § 2201(a)) (emphasis added). "As the permissive text suggests, a district court has discretion in deciding whether to entertain an action under the Act." *Id.* (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282–83 (1995)). Stated differently,

> [t]he Declaratory Judgment Act is "an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant." *Wilton*, 515 U.S. at 287 [ ] (citations omitted). It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so. *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494 [ ] (1942).

*Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005).

As explained below, the Court declines to exercise jurisdiction over this declaratory judgment action.

## B.  The First-Filed Rule

In addition to this action, there is an ongoing action pending between the parties in the District of Connecticut concerning the same or substantially similar issues. "Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-

filed rule." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) (citations omitted). The party objecting to jurisdiction in the first-filed forum has the burden of establishing "compelling circumstances" which warrant an exception to the first-filed rule.  *Id*. (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982)).

One such compelling circumstance is whether the first action was filed "'in apparent anticipation of the other pending proceeding.'"  *Manuel*, 430 F.3d at 1135 (quoting *Ven-Fuel, Inc. v. Dep't of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982)).   The "anticipatory suit exception to the first-filed rule applies when one party, on notice of a potential lawsuit, files a declaratory judgment action in its home forum."  *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 79 (11th Cir. 2013).

Here, Purugganan has met his burden of demonstrating that AFC filed this declaratory action as an improper anticipatory filing.  On February 28, 2020, before AFC filed this action, Purugganan's attorney sent AFC a notice demanding mediation after Purugganan learned that AFC intended to purchase franchises for itself in the territory covered by the MDA.  (Doc. 48-1 at 2–3).  Purugganan's attorney requested a response from AFC concerning mediation within ten business days.  (Doc. 48-1 at 2).  That same day, Purugganan's attorney sent a separate letter to AFC indicating that Purugganan was prepared to file suit in Connecticut or New York if AFC did not respond to the mediation demand.  (Doc. 48-2 at 5, 8).  AFC was aware that Purugganan's threat of litigation was not idle because his attorney set out the claims/causes of action Purugganan would pursue.  (Doc. 48-2 at 3–8).

These letters reflect that, absent an attempt at mediation, Purugganan intended to file a coercive lawsuit and that AFC was aware of that intention when it decided to file this action in Shelby County, Alabama, one week later and before the 10-day response period in the mediation

demand expired.  (Doc. 1-1).  The day after AFC filed its complaint, AFC's attorney sent an email to Purugganan's attorney stating that AFC would not participate in mediation.  (Doc. 48-3 at 2).  In other words, AFC walked away from discussions and an opportunity to mediate to file suit in its preferred forum.  These letters and AFC's subsequent actions indicate AFC had more than just a reasonable apprehension that a controversy existed.  Rather, they reflect that AFC knew litigation was imminent and instead of having to litigate in New York or Connecticut, it proceeded to get a head start in the race to the courthouse by filing its declaratory judgment action in its preferred forum.

AFC counters that litigation was not imminent and, therefore, Purugganan has not met his burden of meeting the anticipatory litigation exception to the first-filed rule.  AFC argues the Eleventh Circuit's decisions in *Ven-Fuel, Inc. v. Dep't of Treasury*, 673 F.2d 1194 (11th Cir. 1982), and *Manuel v. Convergys Corp*, 430 F.3d 1132 (11th Cir. 2005) support this Court's consideration of the declaratory judgment action.  (Doc. 46 at 11).  The Court finds that neither *Ven-Fuel* nor *Manuel* supports AFC's assertion.

Ven-Fuel brought a declaratory judgment action against the United States Department of the Treasury, the United States Customs Service, and various federal officials claiming that a prior criminal decision in the former Fifth Circuit collaterally estopped those governmental entities and officials from relitigating certain issues in a subsequent, pending civil proceeding in the United States District Court for the District of Massachusetts.  *Ven-Fuel*, 673 F.2d at 1195.  The district court dismissed Ven-Fuel's complaint with prejudice and, in the alternative, granted the government's motion for summary judgment.  *Id*.  The Eleventh Circuit affirmed the district

court's dismissal of the case, in part.[2]  *Id*.  The Court explained that a district court, in its discretion, "may decline to entertain a declaratory judgment action on the merits when a pending proceeding in another court will fully resolve the controversy between the parties."  *Id*.  (citation omitted).  The Court further explained that one equitable consideration is whether a party filed a declaratory judgment action "in apparent anticipation of the other pending proceedings."  *Id*.

The Court noted that on February 13, 1980, the government advised Ven-Fuel that if it did not pay an assessed penalty immediately, the government would initiate judicial proceedings to collect the penalty.  *Ven-Fuel, Inc.*, 673 F.2d at 1195.  The next day, "in apparent anticipation of imminent judicial proceedings by the [g]overnment, Ven-Fuel filed the instant declaratory judgment action."  *Id*.  One week later, the government filed a civil action in the United States Court of the District of Massachusetts to recover the penalty.  *Id*.  The Eleventh Circuit concluded that the district court did not abuse its discretion when it declined to entertain Ven-Fuel's declaratory judgment action because it was filed in apparent anticipation of another proceeding. *Id*.

*Ven-Fuel* does not support AFC's assertion that this Court should consider the merits of this declaratory judgment action.  Instead, the Eleventh Circuit's affirmance of the district court's decision to decline to entertain the declaratory judgment action supports just the opposite. Specifically, AFC's decision to file an improper anticipatory action mirrors Van-Fuel's decision to do the same.  Consequently, following the appellate outcome in *Ven-Fuel* means that declining to entertain AFC's declaratory judgment action would not be an abuse of this Court's discretion under the Declaratory Judgment Act.

---

[2] The Eleventh Circuit vacated the district court's alternative grant of the government's motion for summary judgment.  *Ven-Fuel, Inc.*, 673 F.2d at 1195.

In *Manuel*, William Manuel was employed by Convergys in 2003 when he signed a non-competition agreement ("NCA"). *Manuel*, 430 F.3d at 1134. "The NCA contain[ed] a choice-of-law provision requiring the application of Ohio law and stat[ed] that any dispute related to the NCA may be brought in the state and federal courts of Hamilton County, Ohio. *Id*. The following year, Manuel accepted a position with Mellon Financial Corporation. *Id*. Manuel and Mellon discussed the possibility that Convergys might sue to enforce the NCA, and Manuel later sought counsel to discuss the matter. *Id*. After Manuel accepted Mellon's offer of employment, he resigned from Convergys and filed suit in Georgia seeking a declaration that the NCA was unenforceable. *Id*. Six days later, a senior executive at Convergys advised Manuel that he may be able to structure his new role at Mellon in such a way that he did not violate the NCA; however, Manuel proceeded with the action. *Id*. Thereafter, Convergys filed suit against Manuel and Mellon in an Ohio state court for violation of the NCA and misappropriation of trade secrets. *Id*.

The district court concluded that Manuel had not filed an improper anticipatory action. *Manuel*, 430 F.3d at 1136. Specifically, "the district court found that Convergys did not immediately file suit to enforce the NCA against Manuel even after learning of his new employer, but continued to seek assurances that Manuel's job would not violate the agreement." *Id*. at 1137. The Eleventh Circuit agreed that there was no "imminent threat of litigation" from Convergys. *Id*. The Court explained that "[a]t no point did Convergys threaten Manuel with specific legal proceedings," prompting him to file suit, and that a "reasonable apprehension that a controversy existed . . . is not equivalent to an imminent threat of litigation." *Manuel*, 430 F.3d at 1136–37.

The facts in *Manuel* are distinguishable from the facts here. Unlike Convergys, Purugganan most certainly threatened AFC with litigation. On February 28, 2020, before AFC filed this action, Purugganan's attorney sent AFC a notice demanding mediation after Purugganan

learned that AFC intended to purchase franchises for itself in the territory covered by the MDA. (Doc. 48-1 at 2–3).  That same day, Purugganan's attorney sent a separate letter to AFC indicating that Purugganan was prepared to file suit in Connecticut or New York if AFC did not respond to the mediation demand.  (Doc. 48-2 at 5, 8).  Indeed, Purugganan's counsel advised AFC's counsel that although Purugganan did not want to litigate, AFC had "put him in an untenable and inequitable situation."  (Doc. 48-2 at 3).  And the threat of litigation was not idle since Purugganan also set out the claims/causes of action he was prepared to raise in a court action.  (Doc. 48-2 at 3–8).  This amounted to more than just a "reasonable apprehension that a controversy existed." *Manuel*, 430 F.3d at 1137.

Moreover, AFC's own complaint is inconsistent with its contention that it did not file a lawsuit in anticipation of litigation.  Specifically, ACF's complaint states in relevant part:

> 1.      This dispute arises out of certain threats, harassment and attempted intimidation, *including in particular threats of litigation*, that have been made on the Defendant's behalf by the Defendant's counsel in conjunction with a Master Development Agreement between [AFC] and the Defendant.

> 9.    A dispute has arisen over the interpretation of the Master Development Agreement, and the parties have engaged in negotiations, which are, or were, ongoing.  The Defendant, however, has now *threatened a breach of the forum selection clause noted above by stating that the Defendant intends to file suit in venues other than that of Alabama*.

(Doc. 1 at ¶¶ 1, 9) (emphasis added).

AFC asserts that the same forum selection clause in Purugganan's MDA exists in numerous MDAs and Franchise Agreements in geographic locations across the country that were assigned to AFC in its transaction with DEF.  (Doc. 46 at 4).  AFC contends that this Court's refusal to entertain its declaratory judgment action could have "devastating financial consequences" to AFC in the long-term if other franchisees follow Purugganan's actions.  (Doc. 46 at 4).  But AFC does

not acknowledge its own role in the present circumstances: its improper anticipatory filing created an exception to the well-established first-filed rule.

Judge Tjoflat explained in his concurrence how the outcome of these proceedings could have ended differently for AFC. *AFC Franchising*, 43 F.4th at 1302–03. Specifically, Judge Tjoflat concluded that once Purugganan informed AFC of his intention to sue in Connecticut or New York, AFC should have realized it had to litigate the forum selection clause in whatever court Purugganan filed in and should have "simply prepared [its] arguments under the forum selection clause." *Id*. Judge Tjoflat continued that once Purugganan filed suit in the District of Connecticut, AFC could have then "moved for transfer or dismissal based on the forum selection clause and petitioned for writ of mandamus from the Second Circuit had the Connecticut District Court still denied AFC's motion." *Id*. at 1303. Judge Tjoflat reasoned that this approach "would have resolved the forum selection clause in a timely and efficient manner." *Id*.

AFC counters that the concurring opinion "suggests AFC had some obligation to adopt a passive strategy with respect Purugganan's allegations," but that "sound business judgment sometimes demands proactive measures." (Doc. 46 at 7–8). But AFC acknowledges that it took a similar "passive" approach in another case involving the forum selection clause. (Doc. 46 at 4 n.2). In that case, AFC terminated a developer under an identical MDA, which resulted in the developer commencing action in Florida. (*Id*.). AFC contends that its counsel "simply informed counsel for [the developer] of the requirements of the forum selection clause and [the developer's] counsel agreed with AFC's interpretation of the clause. Counsel for [the developer] then voluntarily dismissed the Florida action and re-filed the case in Shelby County, Alabama." (*Id*.).

Here, AFC did not even respond to Purugganan's request for mediation or bother to wait for the 10-day response period to expire before it filed suit in Shelby County. Another judge of

24

this Court has noted that "[f]ear of the other party filing an anticipatory action can easily prompt a party with a dispute to rush to the courthouse instead of raising, discussing, and resolving issues outside of the court system.  This imposes a burden not only on the specific parties to any given dispute, but also on the court system as a whole." *Guntersville Breathables, Inc. v. Twenty-Six Designs, LLC*, No. 4:21-cv-01543-ACA, 2022 WL 1179408, at \*5 (Apr. 20, 2022).

Although the majority opinion in the Eleventh Circuit Court of Appeal's decision determined that Purugganan's personal jurisdiction and venue defenses lacked merit, the majority did not address the impact of an improper anticipatory filing on the exercise of this Court's discretion under the Declaratory Judgment Act.  *See AFC Franchising*, 43 F.4th at 1288–96.  Indeed, this discretionary issue is discrete from the personal jurisdiction and venue questions.  For the reasons stated herein, AFC's anticipatory filing creates an exception to the first-filed rule and permits this Court to decline to exercise jurisdiction over AFC's claims for declaratory judgment.

### C.  Remaining Count & Transfer of Venue under 28 U.S.C. § 1404(a)

While the Court finds that AFC filed an improper anticipatory declaration judgment action, two issues prevent the Court from ending its analysis there.  First, the Court cannot dismiss AFC's complaint in its entirety based on the discretionary jurisdiction afforded by the Declaratory Judgment Act since AFC, in addition to its two counts for declaratory judgment, has also requested damages in its complaint for attorneys' fees and costs.[3]  (Doc. 1-1 at ¶¶ 20–23).  Second, the Eleventh Circuit has explained that "[e]ven if a court finds that a filing is anticipatory, this

---

[3] Purugganan also asserts counterclaims for breach of contract and requests monetary relief. (Doc. 45 at ¶ 68–94; Doc. 45 at 29–31).  However, Purugganan contends that he is pursuing identical claims in the District of Connecticut, which he asserts is the first-filed action concerning those claims.  (Doc. 45 at 7 n.1).

consideration does not transmogrify into an obligatory rule mandating dismissal.  Such a finding remains one equitable factor among many that a district court can consider in determining whether to hear a declaratory judgment action." *Manuel*, 430 F.3d at 1135.

Other factors for consideration are gleaned from the venue transfer statute, 28 U.S.C. § 1404(a), which permits a court to transfer an action "[f]or the convenience of the parties and witnesses, in the interest of justice."  Those factors include:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel*, 430 F.3d at 1135 n.1 (citation omitted).  "[T]he range of considerations available to the district court in deciding whether to entertain the declaratory action [despite the existence of a second-filed coercive action] is vast and the deference afforded to its decision is substantial."  *Id.* at 1137–38.

The Court has considered the § 1404(a) transfer factors and the parties' relevant assertions concerning them and finds that most are either irrelevant or neutral.  However, the Court finds that the last factor—whether transfer is appropriate based on trial efficiency and the interests of justice, based on the totality of the circumstances—warrants transfer of this case to the District of Connecticut.  The Court discusses the factors below.

### 1.  Factors Two, Six, and Seven

Factors two, six, and seven include the location of relevant documents and access to sources of proof; the relative means of the parties; and a forum's familiarity with the governing law.  AFC concedes that the location of relevant documents and ease of access to sources of proof

26

is irrelevant "in the modern era."  (Doc. 46-1 at 30).  AFC also acknowledges that the relative means of the parties are not relevant here.  (Doc. 46-1 at 30).  Since the choice of law clause provides that Maryland law governs the contract, familiarity of the governing law is neutral for the District of Connecticut and this Court.  Accordingly, factors two, six, and seven are not critical to this Court's § 1404(a) analysis.

### 2.   Factors One, Three, Four, and Five

Factors one, three, four, and five concern the convenience of witnesses, convenience of the parties; the location of operative facts; and the availability of process to compel the attendance of unwilling witnesses.  AFC contends its headquarters, employees, and witnesses are in or near Alabama (doc. 46-1 at 28–29), but Purugganan similarly claims that facilities subject to this litigation are in Connecticut, he has a home within that jurisdiction (doc. 48 at 13), and AFC's employees do not have to be compelled to attend proceedings.  As expected, both parties contend that their respective locations would be more convenient for them and some or all of their witnesses.  Therefore, the Court finds these factors to be neutral.

### 3.   Factor Eight

Typically, a plaintiff's choice of forum is afforded deference.  *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996). However, AFC cannot rely on this deference given that it filed an improper anticipatory action, as discussed herein.  *See Modern Pharmacy, LLC v. J.M. Smith Corp.*, No. 19-cv-20369, 2019 WL 13223825, at *6 (S.D. Fla. Apr. 26, 2019) ("Plaintiff's choice of forum is given limited deference considering the Court's finding that this action is an anticipatory filing."); *Soroka v. Lee Techs. Servs., Inc.,* No. 1:06-cv-0710-TWT, 2006 WL 1734277, at *4–5 (N.D. Ga. June 19, 2006) (noting that although the § 1404 factors alone did

27

not justify transfer, they did when weighed in combination with the plaintiff's improper anticipatory filing). Therefore, AFC is not entitled to the weight accorded a plaintiff's choice of forum.

### 4.  Factor Nine

That leaves the last factor—whether trial efficiency and the interests of justice, based on the totality of the circumstances, warrants transfer.  The Court finds that it does.  The Connecticut action has been litigated extensively.  As Judge Tjoflat noted, "the parties have now been litigating their claims in the District of Connecticut for almost two and a half years.  In that time, the parties have engaged in extensive motion practice, including motions for temporary restraining orders and preliminary injunctions, as well as several court-ordered settlement negotiations."[4]  *AFC Franchising*, 43 F.4th at 1299 (Tjoflat, J., concurring).  The District of Connecticut is also considering a motion for partial summary judgment that Purugganan filed on December 23, 2021, and has heard oral argument on the motion.  (Doc. 48-6 at 27–28).  And there is a fully briefed motion to transfer pending before the District of Connecticut that AFC filed after the Eleventh Circuit issued its decision on AFC's appeal.  *See Purugganan v. AFC Franchising, LLC*, No. 3:20-cv-00360-KAD (D. Conn. Aug. 30, 2022), ECF Nos. 205, 208, 209, 210.  "In short, both the parties and the Connecticut District Court have already invested a great deal of time and effort into litigating in Connecticut."  *AFC Franchising*, 43 F.4th at 1299 (Tjoflat, J., concurring).

The interests of justice, specifically judicial economy and inconsistent judgments, certainly weigh in favor of transferring this action to the District of Connecticut.  Accordingly, the Court finds that consideration of the § 1404(a) factors, coupled with AFC's anticipatory filing of this

---

[4] The Connecticut action has over 200 docket entries (doc. 48-6), compared to less than 50 docket entries in this action.

lawsuit, justify a transfer. *See 1818 Farms, LLC v. Plum Island Soap Co., LLC*, No. 5:18-cv-00135-AKK, 2018 WL 3708558, at *7 (N.D. Ala. Aug. 3, 2018) (finding "slight advantage" in favor of transfer enhanced after finding plaintiff engaged in anticipatory filing).

### III.  Conclusion

AFC's anticipatory filing is a compelling circumstance that warrants an exception to the first-filed rule.  *See Manuel*, 430 F.3d at 1135.  Additionally, while most of the factors under 28 U.S.C. § 1404(a) are irrelevant or neutral, trial efficiency and the interests of justice, based on the totality of the circumstances, weigh in favor of transferring this entire action to the District of Connecticut.  For these reasons, the Court declines to exercise jurisdiction over AFC's claims for declaratory judgment and **TRANSFERS** this action to the United States District Court for the District of Connecticut pursuant to 28 U.S.C. § 1404(a).  The Court will enter an Order consistent with this Memorandum Opinion.

DONE this 24th day of January, 2023.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE